FILED
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2012 NOV 13   AM 10: 18

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

---------------------------------------------------------------X

JERRY LARAQUE,

                        Index No.:

                 Plaintiff,

CV 12 5571

  -against-

                              **COMPLAINT**

THE FOUNDRY AT HUNTERS POINT
CONDOMINIUM; NEW BEDFORD
MANAGEMENT INC.; JOHN OLIVIERI, in his
official and individual capacities; and
ROBERT SWIDERSKI, in his official and individual
capacities,

                              Jury Trial Demanded

IRIZARRY, J.

                Defendants.

GO, M.J.

---------------------------------------------------------------X

      Plaintiff Jerry Laraque ("Mr. Laraque" or "Plaintiff"), by and through his undersigned

counsel, Thompson Wigdor LLP, as and for his Complaint in this action against Defendants The

Foundry at Hunters Point ("The Foundry"), New Bedford Management Inc. ("New Bedford

Management") (together, the "Company"),  John Olivieri ("Defendant Olivieri"), and Robert

Swiderski ("Defendant Swiderski") (collectively, "Defendants"), hereby states and alleges as

follows:

## NATURE OF THE CLAIMS

    1.     Mr. Laraque brings this action for declaratory, injunctive and equitable relief, as

well as for monetary damages, to redress Defendants' unlawful employment practices, including

discriminatory treatment, harassment, and retaliation committed against him due to his race,

color, national origin, sex and for his complaints of discrimination, in violation of Section 1981

of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human

Rights Law, New York Executive Law §§ 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, New York Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

2.      Specifically, during his employment at the Company, Mr. Laraque was forced to work in a hostile work environment, where he was physically abused, subjected to repeated and blatant acts of discrimination and routinely tormented by his supervisor Defendant Olivieri. By way of example only, Defendant Olivieri punched Plaintiff in the face on multiple occasions, forcibly attempted to stick his tongue into Mr. Laraque's mouth, and, on one occasion, even choked Mr. Laraque with a broom stick by forcefully pinning him up against a wall by his neck. Moreover, Defendant Olivieri habitually called Plaintiff racial slurs such as "Nigger," "Black bastard," and "Black piece of shit." After Mr. Laraque complained repeatedly about the abhorrent treatment to which he was subjected, Defendants unlawfully retaliated against him by terminating his employment as a result of his complaints, rather than investigating and remedying the discrimination and harassment.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant New Bedford Management is a corporation doing business in the State of New York and is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PROCEDURAL REQUIREMENTS

5.    On or about January 31, 2012, Mr. Laraque filed a complaint with the New York State Division of Human Rights ("Division") alleging violations of Title VII against Defendants.

6.    On or about July 27, 2012, he received notice from the Division of its Determination and Order of Dismissal for Administrative Convenience of the complaint against Defendants The Foundry, New Bedford Management, John Olivieri and Robert Swiderski, where Plaintiff is now allowed to bring private suit as if no complaint had been filed.

7.    Pursuant to NYCHRL § 8-502, Mr. Laraque will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten days of its filing, thereby satisfying the notice requirements of this section.

8.    Mr. Laraque has complied with all statutory prerequisites to his Title VII claims, having filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and having received notice of his right to sue from the EEOC on October 23, 2012. This action was filed within 90 days of receipt of his EEOC right to sue letter.

9.    Mr. Laraque has complied with any and all other prerequisites to filing this action.

## PARTIES

10.    Plaintiff Jerry Laraque, a Black Haitian male who lives in Brooklyn, New York, is a former doorman for the Company. At all relevant times, Mr. Laraque worked in Long Island City and met the definition of an "employee" under all applicable statutes.

11.    Defendant The Foundry is a residential condominium located at 2-40 51st Avenue, Long Island City, New York. At all relevant times, Defendant The Foundry has met the definition of an "employer" under all applicable statutes.

12.     Defendant New Bedford Management is a management company, representing numerous cooperative, condominium and rental buildings throughout New York, with its principal offices located at 210 East 23rd Street, New York, New York. New Bedford Management is the managing company of The Foundry.

13.     Defendant John Olivieri is a Caucasian/White male who, upon information and belief, resides in the State of New York. Defendant Olivieri is the superintendent of The Foundry and was Mr. Laraque's immediate supervisor beginning in or around February 2011. In that capacity, he controlled Mr. Laraque's employment with the Company, and participated directly in the discrimination, harassment, physical violence, intimidation, verbal abuse, and unlawful retaliation committed against Plaintiff Laraque.

14.     Defendant Robert Swiderski is a Caucasian/White male employed by New Bedford Management as the property manager assigned to The Foundry. In that capacity, he controlled Mr. Laraque's employment with the Company, and participated directly in the discrimination and unlawful retaliation committed against him.

## FACTUAL ALLEGATIONS

15.     In or around August 2009, Plaintiff Jerry Laraque began working at the Company as a security guard.

16.     Throughout his employment, Mr. Laraque demonstrated his strong work ethic and dedication by working tirelessly for the Company. As a result of his good performance, Mr. Laraque was promoted to the position of Concierge/Doorman after working at the Company for only a few months.

17.     Unfortunately, however, Mr. Laraque was subjected to persistent and severe physical and verbal abuse and sexual and racial discrimination and harassment while at the

4

Company. Mr. Laraque reported the outrageous and unlawful acts being committed against him, only to have the Company unlawfully retaliate against him by terminating his employment.

**I.      Racial Discrimination and Violence Against Mr. Laraque**

18.      The discrimination against and harassment of Mr. Laraque dates back to when he began working with the Company and Defendant John Olivieri was working for The Foundry as a painting contractor.

19.      Defendant Olivieri would openly mock Mr. Laraque and refer to him using racist and offensive terms, including "Black bastard."

20.      The circumstances of Mr. Laraque's employment further deteriorated in or around February 2011 when the Company hired Defendant Olivieri as Superintendent at The Foundry. Mr. Laraque thereafter reported directly to Defendant Olivieri as his supervisor.

21.      Soon after Defendant Olivieri became Superintendent, his harassment of Mr. Laraque intensified, became a daily occurrence, and included additional ugly racial epithets.

22.      Specifically, Defendant Olivieri habitually called Mr. Laraque hateful, vulgar and offensive names such as "Nigger," "monkey," "Black bastard," and "Black piece of shit."

23.      Defendant Olivieri openly used racist language, including in front of various tenants and coworkers.

24.      By way of example only, Defendant Olivieri at times referred to Mr. Laraque as having "big Chicago lips," complaining about "smelly Blacks," and saying that Mr. Laraque was a "fucking Black monkey piece of shit." Mr. Laraque found these statements to be deeply offensive and humiliating.

25.      Defendant Olivieri also constantly ridiculed Mr. Laraque, by laughing at his English, which Mr. Laraque spoke with a Haitian accent, and even saying that Mr. Laraque's skin color was so dark that he cannot find himself at night.

26.     Defendant Olivieri did not subject non-Black and/or non-Haitian employees to racial slurs or racially offensive language and his blatantly racist comments toward Mr. Laraque were motivated by Mr. Laraque's race, color, national origin and ethnicity as a Black male Haitian.

27.     Defendant Olivieri not only made racist and outrageous comments but also discriminatorily threatened Mr. Laraque's employment with the Company.  By way of example only, Defendant Olivieri often told Mr. Laraque that he would not last long at the Company and repeatedly threatened to fire Mr. Laraque for no legitimate reason.  Mr. Laraque's non-Black, non-Haitian coworkers were not subjected to such treatment.

28.     Defendant Olivieri also used his role as Superintendent as leverage to force Mr. Laraque to perform work that was undesirable and outside of the scope of his job position, such as trash removal, a job traditionally reserved for the building's porter.  Defendant Olivieri forced Mr. Laraque to perform these duties to a much greater extent than he did other non-Black and/or non-Haitian employees.

29.     Moreover, Defendant Olivieri used violence to harass Mr. Laraque.

30.     On one instance in December 2011, Defendant Olivieri physically forced Mr. Laraque against a wall and held a broomstick against his neck to choke him.

31.     Defendant Olivieri also punched Mr. Laraque in the face several times over the course of his employment with the Company.

**II.     Sexual Harassment of Mr. Laraque**

32.     The harassment of Mr. Laraque by Defendant Olivieri was often sexual in nature, taking on both physical and verbal manifestations.

33.     For instance, Defendant Olivieri often fondled Mr. Laraque against his will.  He repeatedly touched Mr. Laraque on the leg, near his groin, in a sexual manner.

34.     Defendant Olivieri also would press his penis against Mr. Laraque.

35.     During these incidents, and at other times, Defendant Olivieri would humiliate Mr. Laraque by asking Mr. Laraque to do him a "favor" and "hold [his] cock" or "hold [his] dick." Defendant Olivieri also, on multiple occasions, told Mr. Laraque to perform oral sex on him, saying that, "If you suck a dick once, it doesn't mean you're gay."

36.     Defendant Olivieri then degraded Mr. Laraque even further when he attempted to stick his tongue in Mr. Laraque's mouth on two separate occasions. Defendant Olivieri did so by pinning Mr. Laraque against a wall in an attempt to restrain him before Mr. Laraque was able to push him away.

37.     Defendant Olivieri would boldly exhibit this deplorable conduct in front of others.

38.     After each incident of harassing conduct, Mr. Laraque made it plainly known to Defendant Olivieri that he wanted the vulgar and outrageous conduct to stop.

**III.    Mr. Laraque's Complaints and Subsequent Unlawful Retaliation**

39.     Mr. Laraque desperately sought help by complaining to various people at the Company and at the building about the discriminatory and other unlawful acts being committed against him, to no avail.

40.     For instance, Mr. Laraque reached out to The Foundry's board of managers (the "Board") numerous times to report Defendant Olivieri's unlawful conduct, including to the Board president and the Board secretary in the fall of 2011. In fact, Mr. Laraque even complained about Defendant Olivieri to board members he encountered in the lobby of The Foundry.

41.     The Board members, however, took no actions to protect Mr. Laraque from Defendant Olivieri's discrimination, harassment and violence and suggested instead that Mr. Laraque speak to management at the Company about his issues.

42.     In December 2011, when the conduct of Defendant Olivieri was at its worst, Mr. Laraque expressed his intention to contact property manager, Defendant Robert Swiderski. Defendant Olivieri was not worried about this prospect, however, as he informed Mr. Laraque that Defendant Swiderski "doesn't like Black people."

43.     Defendant Swiderski lived up to his reputation, as his response to two separate complaints by Mr. Laraque to him was, in sum and substance, "I'm not listening to you," and "This is bullshit."

44.     Mr. Laraque's complaints were met with indifference and outright hostility. As a result, the harassment and discrimination grew worse as Defendant Olivieri was emboldened by the Company's failure to respond to or follow up on Mr. Laraque's complaints.

45.     Armed with a renewed feeling of immunity, Defendant Olivieri spent the day of January 6, 2012 harassing Mr. Laraque by touching him against his will, pushing him, calling him derogatory names and attempting to put his tongue in Mr. Laraque's mouth.

46.     That same day, Mr. Laraque was called into Defendant Swiderski's office, where he was summarily terminated by Defendant Swiderski.

47.     Defendant Swiderski provided Mr. Laraque a bogus and pretextual reason for the decision to terminate his employment. Although Mr. Laraque was told he was terminated for performance reasons, the primary incident cited by the Company had occurred months earlier and was exaggerated by Company management.

48.     In fact, Mr. Laraque's termination was in retaliation for his complaints of sexual and racial discrimination and harassment.

49.     Determined that the unlawful conduct, harassment and physical assaults of Defendant Olivieri would not be ignored and swept under the rug, Mr. Laraque filed a criminal

complaint against Defendant Olivieri with the New York City Police Department on January 9,

2012 in which he reported the harassment and violence committed by Defendant Olivieri.

50.     As a result of Defendants' unlawful racial discrimination, sexual harassment, and

retaliation, Mr. Laraque has suffered, and continues to suffer, emotional distress, humiliation,

depression, stress, and loss of self-esteem.

51.     At all times relevant to this Complaint, Defendant Olivieri knew, or should have

known, that his violent, discriminatory and/or harassing conduct would cause emotional and

mental distress to Mr. Laraque. Even after Mr. Laraque's internal complaints, Defendant

Olivieri continued to abuse and harass Mr. Laraque. Defendants' act of retaliation and failure to

take any meaningful action to end the unlawful discrimination, harassment, and retaliation

committed against Mr. Laraque was wanton, reckless, and intentional, for which Mr. Laraque is

entitled to receive an award of punitive damages.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Discrimination and Harassment in Violation of Section 1981)**

52.     Plaintiff hereby repeats and re-alleges each and every allegation as contained in

each of the preceding paragraphs as if fully set forth herein.

53.     Defendants have discriminated against Plaintiff and subjected him to harassment

on the basis of his race and/or color in violation of Section 1981 by denying to him equal terms

and conditions of employment available to employees who are White, including, but not limited

to, subjecting him to offensive and harassing comments and terminating him based on his race

and/or color.

54.     As a direct and proximate result of Defendants' unlawful and discriminatory

conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary

and/or economic damages, including, but not limited to, loss of past and future income,

9

compensation and benefits, for which he is entitled an award of monetary damages and other relief.

55.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of damages.

56.     Defendants' unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Mr. Laraque's federally protected rights under Section 1981, for which Mr. Laraque is entitled an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of Section 1981)

57.     Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

58.     Defendants have unlawfully retaliated against Plaintiff in violation of Section 1981 for his complaints regarding the discriminatory conduct and acts of violence and intimidation to which he was subjected by, *inter alia*, repeatedly failing to respond to his complaints regarding the conduct of Defendant Olivieri, and by ultimately terminating his employment.

59.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled an award of monetary damages and other relief.

10

60.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of damages.

61.     Defendants' unlawful retaliatory conduct constitutes malicious, willful, wanton and/or reckless indifference to Mr. Laraque's federally protected rights under Section 1981, for which Mr. Laraque is entitled an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination and Harassment in Violation of Title VII)

62.     Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

63.     Defendants The Foundry and New Bedford Management have discriminated against Plaintiff and subjected him to harassment on the basis of his race, color, national origin and/or sex in violation of Title VII by denying to him equal terms and conditions of employment, including, but not limited to, subjecting him to disparate working conditions, and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment, including sexual harassment.

64.     Defendants The Foundry and New Bedford Management have also discriminated against Plaintiff and subjected him to harassment on the basis of his race, color, national origin and/or sex in violation of Title VII by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, acts of violence, physical intimidation, unwanted touching, verbal abuse and derogatory comments by Defendant Olivieri towards Plaintiff.

11

65.     As a direct and proximate result of Defendants The Foundry's and New Bedford Management's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled an award of monetary damages and other relief.

66.     As a direct and proximate result of Defendants The Foundry's and New Bedford Management's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of damages.

67.     Defendants The Foundry's and New Bedford Management's unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Mr. Laraque's federally protected rights under Title VII, for which Mr. Laraque is entitled an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

68.     Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

69.     Defendants The Foundry and New Bedford Management have unlawfully retaliated against Plaintiff in violation of Title VII for his complaints regarding the discriminatory conduct and acts of intimidation and violence to which he was subjected by, *inter alia*, repeatedly failing to respond to his complaints regarding the conduct of Defendant Olivieri, and by ultimately terminating his employment.

70. As a direct and proximate result of Defendants The Foundry's and New Bedford Management's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled an award of monetary damages and other relief.

71. As a direct and proximate result of Defendants The Foundry's and New Bedford Management's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of monetary damages and other relief.

72. Defendants The Foundry's and New Bedford Management's unlawful and retaliatory actions constitute malicious, willful, wanton and/or reckless indifference to Mr. Laraque's federally protected rights under Title VII, for which Mr. Laraque is entitled an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Discrimination and Harassment in Violation of the NYSHRL)

73. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

74. Defendants have discriminated against Plaintiff on the basis of his race, color, national origin and/or sex in violation of the NYSHRL by denying him the same terms and conditions available to employees not within these protected classes, including, but not limited to, subjecting him to disparate working conditions, denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment and terminating his employment.

75.     Defendants have discriminated against Plaintiff on the basis of his race, color, national origin and/or sex in violation of the NYSHRL by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff based on his race, color, national origin and/or sex.

76.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled an award of monetary damages and other relief.

77.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of monetary damages and other relief.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Retaliation in Violation of NYSHRL)

78.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

79.     Defendants retaliated against Plaintiff in violation of the NYSHRL because of his complaints regarding the discriminatory conduct and acts of violence and intimidation to which he was subjected by, *inter alia*, repeatedly failing to respond to his complaints regarding the conduct of Defendant Olivieri, and by ultimately terminating his employment.

80.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or other economic harm for which he is entitled an award of monetary damages and other relief.

14

81.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of monetary damages and other relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Aiding and Abetting Violations of the NYSHRL)

82.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

83.     Defendants Olivieri and Swiderski knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff stated herein in violation of the NYSHRL.

84.     As a direct and proximate result of Defendants Olivieri's and Swiderski's aiding and abetting violations of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or other economic harm for which he is entitled an award of monetary damages and other relief.

85.     As a direct and proximate result of Defendants Olivieri's and Swiderski's aiding and abetting violations of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of monetary damages and other relief.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Discrimination and Harassment in Violation of the NYCHRL)

86.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

87.     Defendants have discriminated against Plaintiff on the basis of his race, color, national origin and/or sex in violation of the NYCHRL by denying him the same terms and conditions available to employees not within these protected classes, including, but not limited to, subjecting him to disparate working conditions, denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment and terminating his employment.

88.     Defendants have discriminated against Plaintiff on the basis of his race, color, national origin and/or sex in violation of the NYCHRL by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff based on his race, color, national origin and/or sex.

89.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled an award of monetary damages and other relief.

90.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of monetary damages and other relief.

91.    Defendants' unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Mr. Laraque's protected rights under the NYCHRL, for which Mr. Laraque is entitled an award of punitive damages.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)

92.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

93.    Defendants retaliated against Plaintiff in violation of the NYCHRL because of his complaints regarding the discriminatory conduct and acts of violence and intimidation to which he was subjected by, *inter alia*, repeatedly failing to respond to his complaints regarding the conduct of Defendant Olivieri, and by ultimately terminating his employment.

94.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or other economic harm for which he is entitled an award of monetary damages and other relief.

95.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of monetary damages and other relief.

96.    Defendants' unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Mr. Laraque's protected rights under the NYCHRL, for which Mr. Laraque is entitled an award of punitive damages.

17

## AS AND FOR A TENTH CAUSE OF ACTION
### (Aiding and Abetting Violations of the NYCHRL)

97.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

98.     Defendants Olivieri and Swiderski knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff stated herein in violation of the NYCHRL.

99.     As a direct and proximate result of Defendants Olivieri's and Swiderski's aiding and abetting violations of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or other economic harm for which he is entitled an award of monetary damages and other relief.

100.    As a direct and proximate result of Defendants Olivieri's and Swiderski's aiding and abetting violations of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, as well as damage to both his personal and professional reputations, for which he is entitled an award of monetary damages and other relief.

101.    Defendants Olivieri's and Swiderski's unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Mr. Laraque's protected rights under the NYCHRL, for which Mr. Laraque is entitled an award of punitive damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (Assault as against Defendant Olivieri only)

102.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

103.     Defendant Olivieri's violent acts committed against Plaintiff, including, but not limited to, repeatedly punching Plaintiff in the face, attempting to stick his tongue in Mr. Laraque's mouth, pinning him against a wall on multiple occasions, as well as using a broom to choke him, amounted to a series of events creating a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person, all of which were done intentionally by Defendant Olivieri and without Plaintiff's consent.

104.     As a direct and proximate result of the aforementioned assaults, Plaintiff has sustained in the past, and will sustain in the future, physical injury, pain and suffering, psychological and emotional distress, mental anguish, embarrassment and humiliation.

105.     Defendant Olivieri's conduct was wanton, malicious and/or cruel, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Battery as against Defendant Olivieri only)

106.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

107.     Defendant Olivieri's violent acts committed against Plaintiff, including, but not limited to, repeatedly punching Plaintiff in the face, attempting to stick his tongue in Mr. Laraque's mouth, pinning him against a wall on multiple occasions, as well as using a broom to choke him, amounted to a series of harmful and offensive contacts to Plaintiff's person, all of which were done intentionally by Defendant Olivieri without Plaintiff's consent.

108.     As a direct and proximate result of the aforementioned batteries, Plaintiff has sustained in the past, and will sustain in the future, physical injury, pain and suffering, psychological and emotional distress, mental anguish, embarrassment and humiliation.

109.     Defendant Olivieri's conduct was wanton, malicious and/or cruel, entitling Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

B.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

C.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D.      An award of damages to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

E.      An award of punitive damages;

F.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and,

G.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
       November 13, 2012

Respectfully submitted,

THOMPSON WIGDOR LLP

By:

Kenneth P. Thompson
Lawrence M. Pearson

85 Fifth Avenue
New York, New York 10118
Telephone: 212.257.6800
Facsimile: 212.257.6845

*Attorneys for Plaintiff*

21