UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

JERRY LARAQUE,

Plaintiff,

-against-

THE FOUNDRY AT HUNTERS POINT CONDOMINIUM; NEW BEDFORD MANAGEMENT INC.; JOHN OLIVIERI, in his official and individual capacities; and ROBERT SWIDERSKI in his official and individual capacities;

Defendants.

-------------------------------------------------------------------------X

Case No.: 12 CV 5571 (DLI) (MDG)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

**CANTOR, EPSTEIN & MAZZOLA, LLP**
*Attorneys for Defendants*
49 West 37th Street
New York, New York 10018
(212) 768-4343

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT……………………………………………………..………1**

**STATEMENT OF FACTS……………………………………………………...………….3**

**ARGUMENT………………………………………………………………………...……...6**

**THE APPLICABLE MOTION TO DISMISS STANDARD…………....……………….6**

**LARAQUE'S CAUSES OF ACTION ARISING UNDER TITLE VII MUST BE DISMISSED BECAUSE THE CONDO DOES NOT QUALIFY AS AN "EMPLOYER" UNDER THE STATUTE………………………………………………………………………...…7**

**ALL DISCRIMINATION CLAIMS PLEADED AGAINST DEFENDANT NEW BEDFORD MUST BE DISMISSED AS A MATTER OF LAW……………………………………………….……....8**

**ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED AS LARAQUE HAS FAILED TO PLEAD SUFFICIENT GROUNDS FOR INDIVIDUAL LIABILITY……………………………………...…………11**

**LARAQUE'S SEXUAL HARASSMENT CLAIMS SHOULD BE DISMISSED AS PLEADED…………………………………………..…………14**

**LARAQUE'S ASSAULT AND BATTERY ALLEGATIONS OCCURRING OUTSIDE THE APPLICABLE LIMITATIONS PERIOD SHOULD BE DISMISSED AS A MATTER OF……………………..….16**

**CONCLUSION………………………………………………………………………...….17**

**PRELIMINARY STATEMENT**

Defendants the Foundry at Hunters Point Condominium (the "Condo"), New Bedford Management Inc. ("New Bedford"), John Olivieri ("Olivieri") and Robert Swiderski ("Swiderski"; where appropriate, the Condo, New Bedford, Olivieri and Swiderski will collectively be referred to as "Defendants") move, pursuant to Fed. R. Civ. P. 12(b)(6), to partially dismiss plaintiff Jerry Laraque's ("Laraque" or "Plaintiff") complaint, and specifically, those causes of action which are legally insufficient as a matter of law.

Initially, the third and fourth causes of action for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq*. ("Title VII") must be dismissed in *toto* against all Defendants. In this respect, it is undisputed that Laraque was employed by the Condo, which at all relevant times employed less than fifteen employees. It, therefore, does not fall within Title VII's definition of "employer," and these claims cannot survive.

Turning to New Bedford, the complaint against it is fatally flawed for a few reasons. First, Laraque acknowledges in his complaint that New Bedford role's was that of an agent for a disclosed principal and there are no allegations that an employment relationship existed between it and Laraque (because none did). New Bedford is simply the managing agent whose responsibility, pursuant to a management agreement, is to administer the Condo's affairs. Pursuant to the terms of its agreement with the Condo, New Bedford did not exercise any hiring or firing authority over Laraque, who was hired before New Bedford began managing the Condo and was terminated by the Condo. Thus, the Title VII, New York State Human Rights Law, New York Executive Law §§290 *et seq*. (the "NYSHRL") and New York City Human Rights Law, New York Admin. Code §§8-101 *et seq*. (the "NYCHRL") claims must be dismissed.

Furthermore, there had never been a contractual relationship between New Bedford and Laraque nor is one alleged. Absent such a relationship, Laraque's Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 ("Section 1981") claim cannot survive against New Bedford either.

Finally, and perhaps most significantly, apart from naming New Bedford as a party, Laraque has not pleaded that it did anything wrong. There is not a single allegation that New Bedford discriminated against him. Thus, even under the most generous reading of the complaint, it is still legally insufficient as against New Bedford and accordingly, the entire complaint must be dismissed as against it.

Next, Swiderski is not a proper party to this lawsuit as he, just like his employer New Bedford, lacked independent authority to hire or terminate Laraque. At all relevant times such decision making remained solely with the Condo. Swiderski has no ownership interest in the Condo and was merely an employee assigned to handle the Condo's account, along with other properties in his portfolio. As with New Bedford, the complaint does not allege that Swiderski engaged in any discriminatory actions. The sole allegation against him is that after Laraque complained to him, he responded by saying "I'm not listening to you" and "this is bullshit". This stand-alone allegation, without more, is insufficient to hold Swiderski individually liable for any of the asserted claims and the complaint must be dismissed as against him.

For his part, Olivieri is an employee of the Condo without any ownership interest and likewise had no independent control over Laraque's employment. He did not have any decision making authority regarding hiring or firing of the Condo's employees in general or Laraque in particular. At all times he acted pursuant to the Condo's orders. In addition, to the extent that Laraque is alleging that Olivieri's actions form the basis for his discrimination claims, the aiding

and abetting claims against him must be dismissed as an individual cannot aid or abet his own acts. Thus, the Title VII, NYSHRL and NYCHRL aiding and abetting claims must be dismissed as against him.

Next, Laraque's sexual harassment claim fails since he has not alleged any facts to show he was targeted because he is a man or that Olivieri, his alleged harasser, is a homosexual. Pleading these elements is required in order to support his same-sex sexual harassment claim. Laraque's failure to do so supports dismissal of the sexual harassment claims as well.

Finally, Laraque's complaint is overrun with vague and conclusory allegations about events occurring during unspecified time periods. To the extent any of the events upon which he bases his Title VII, assault and battery claims occurred outside of the applicable statute of limitations periods, they are not actionable and those claims should be dismissed.

For all of the foregoing reasons, and as further detailed below, the various causes of action in Laraque's complaint should be dismissed as insufficiently pled.

## STATEMENT OF FACTS

Unless otherwise demonstrated through documents integral to the complaint, the following facts are taken from Laraque's complaint. [1] For purposes of this motion only, the referenced allegations from the complaint are assumed to be true.[2]

***The Parties***

The Condo is a 57 unit residential condominium located at 2-40 51st Avenue, Long Island City, New York [¶ 11].[3] The Condo's affairs are governed through its board of managers

---

1 *Trustees of Local 138 Pension Trust Fund v. Logan Circle Partners, L.P.*, 2012 WL 1902266 at *2 (E.D.N.Y. May 25, 2012) ("Although the Court is limited to facts as stated in the Amended Complaint, it may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.") (internal quotations omitted).

2 A true and correct copy of the complaint in the instant litigation is attached hereto as Exhibit A.

which is comprised of volunteer unit owners, and its day-to-day tasks are managed by its agent, New Bedford which began managing the Condo in April 2011 [¶12]. New Bedford's management responsibilities are detailed in a February 2011 agreement between itself and the Condo [Exhibit B]. As is relevant here, New Bedford's role with respect to employees is outlined in the second paragraph of the management agreement as follows:

> (a) Cause to be hired, paid and supervised, all persons necessary to be employed in order to properly maintain and operate the Building who, in each instance, *shall be the Owner's and not the Agent's employees*, and cause to be discharged all persons unnecessary or undesirable, *except that no person employed at the Building shall be discharged and no person hired without the prior written consent of the [Condo]* [Exhibit A, *emphasis supplied*].

Swiderski is an employee of New Bedford and the Condo is one of the properties that he manages [¶14]. Olivieri initially performed painting work for the Condo as an independent contractor beginning in or about 2009 and was eventually hired by the Condo as its full-time superintendent [¶13] Although Laraque alleged that Olivieri was hired in February 2011, the Condo actually hired him on October 13, 2011 [Exhibit C]. Olivieri's duties are set forth in his employment contract, which as is relevant states, among other things, that he was to be supervised by the Condo and work at its direction and pursuant to its orders [Exhibit B ¶ 4].

Laraque was hired by the Condo in or about 2009 (two years before New Bedford began managing the Condo) and was initially employed as a security guard and eventually was promoted to a doorman position [¶¶11; 15].

At present, and at all times relevant to this action, the Condo employed a less than fifteen employees [Exhibit D].

---

[3] Superstorm Sandy severely damaged the Condo and it is currently uninhabitable as a result of water infiltration. It is anticipated that residents will not be able to move back in again until repairs are completed, which date is currently unknown but is anticipated to be later this year.

***Relevant Facts***

Laraque asserts that from the time he began working at the Condo in 2009, Olivieri occasionally referred to him through the use of offensive terms such as 'Black bastard' [¶19]. Olivieri did not work for the Condo during this time period and there are no allegations that Laraque complained about these comments to anyone, including his then supervisor, the Condo or New Bedford. Other than those occasional comments he heard between 2009 and February 2011, Laraque doesn't allege that he was subjected to any other discriminatory conduct during this period [¶¶ 19-20].

After Olivieri was hired as the Condo's full-time superintendent, Laraque alleges that Olivieri began calling him offensive names on a regular basis; ridiculed his English; and threatened to fire him without a legitimate basis [¶21-27]. Laraque additionally claims that Olivieri began sexually harassing him at this time as well [¶32]. Among other things, Laraque also alleges that Olivieri subjected him to unwanted sexual touching and propositioned him for oral sex [¶33-35].

Based on the complaint, these incidents went unreported by Laraque until the Fall of 2011 [¶40]. It was also at or about this time that Laraque was issued a written disciplinary action due to his failure to conduct himself in an appropriate manner. Specifically, after several verbal warnings for similar issues, the Condo suspended Laraque for an outburst in which he was shouting at another employer [Exhibit E]. At that time, he was warned that if his performance did not improve, he could face additional disciplinary actions up to and including termination.

Thereafter, Laraque attempted to complain to board members he saw passing in the Condo's lobby about his allegations of discrimination and sexual harassment [¶40]. One of these board members suggested that any complaint he may have should be brought to the Condo's

managing agent [¶ 43]. Although Laraque vaguely alleges that he reported a complaint to Swiderski and was told that it was "bullshit," he does not specify the exact conduct that he was complaining of or what he said to Swiderski prior to Swiderski's response [¶43].

Ultimately, on January 6, 2012, Swiderski, acting at the direction of the Condo, informed Laraque that the Condo had terminated his employment based on performance issues and a series of incidents in which Laraque instigated verbal and physical altercations with co-workers (other than Olivieri) [¶47; Exhibit F]. The grounds for his termination were set forth in a January 23, 2012 letter to Laraque signed by the Condo's board president, which cited "nonperformance of duties, insubordination, and public unacceptable behavior in the lobby" [Exhibit F].

Following his termination, Laraque filed a criminal complaint against Olivieri with the New York City Police Department, as well as a complaint with the New York State Division of Human Rights [¶¶ 5, 49].

## ARGUMENT

## THE APPLICABLE MOTION TO DISMISS STANDARD

To survive a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotations omitted). However, the court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663, 129 S. Ct. at 1940 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007)). However,

the complaint must be dismissed if plaintiff "has not nudged his claims of [] discrimination across the line from conceivable to plausible." *Id* (internal citations and quotations omitted).

**LARAQUE'S CAUSES OF ACTION ARISING UNDER TITLE VII MUST BE DISMISSED BECAUSE THE CONDO DOES NOT QUALIFY AS AN "EMPLOYER" UNDER THE STATUTE**

Each of Laraque's causes of action for discrimination and retaliation arising under Title VII must be dismissed in their entirety because Laraque has not adequately pleaded, nor can he demonstrate, that the Condo satisfies the statutory definition of an "employer." Title VII prohibits discrimination based on race, color, religion, sex, or national origin by an "employer." 42 U.S.C. § 2000e–2. An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Where the alleged offender employs less than the requisite amount, the claims against it must be dismissed as a matter of law. *See Charles v. Chaplin*, 356 Fed. Appx. 540, 541 (2d Cir. 2009) (dismissing Title VII claim against employer with less than 15 employees).

In this case, the complaint asserts, in conclusory fashion, that the Condo "has met the definition of an 'employer' under all applicable statutes" [¶11]. However, the complaint does not specify the number of employees that the Condo has. Indeed, as Laraque is well aware, during the relevant time period, the Condo employed less than 15 employees -- the minimum required for a valid Title VII claim. Therefore, the third and fourth causes of action must be dismissed as a matter of law.

If this Court does not dismiss Laraque's Title VII claims outright, they should be dismissed to the extent that the allegations are barred by the applicable statute of limitations.

Title VII claims are subject to the statutory limits in 42 U.S.C. § 2000e-5(e)(1). "A plaintiff may not assert Title VII [] claims based on events transpiring more than 300 days prior to the filing of [a] charge." *Lukasiewicz-Kruk v. Greenpoint YMCA*, 2009 WL 3614826 at *6 (E.D.N.Y. Oct. 30, 2009) (citing 42 U.S.C. § 2000e–5(e)(1)). "[T]he statute precludes recovery for discrete acts of discrimination or retaliation that occur outside [this time] period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 2068 (2002).

Here, Laraque initially filed a complaint with the State Division of Human Rights on January 31, 2012. Accordingly, any acts which occurred prior to April 6, 2011 are time barred, including any acts relating to the allegation in paragraph 18 of the complaint that "the discrimination against and harassment of Mr. Laraque [which] dates back to when he began working with the Company and Defendant John Olivieri was working for The Foundry as a painting contractor."

**ALL DISCRIMINATION CLAIMS PLEADED AGAINST DEFENDANT NEW BEDFORD MUST BE DISMISSED AS A MATTER OF LAW**

At the outset, Laraque's claims against New Bedford, arising under Title VII and the NYSHRL must be dismissed because New Bedford is not Laraque's employer.

Both Title VII and NYSHRL make it unlawful for an "employer" to discharge an individual on this basis of his race, color, sex, or national origin, among other things. 42 U.S.C. § 2000-e2(a)(1); Executive Law § 296. An individual is not as an employer -- and thus is not individually subject to suit under NYSHRL -- "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984) (*per curiam*); *Tomka v. Seiler Corp*., 66 F.3d 1295, 1317 (2d Cir. 1997) (citing *Patrowich*). No individual liability attaches under Title VII. *Workneh v. Pall Corp.*, --- F.Supp.2d ----, 2012 WL 4845836

at *6 (E.D.N.Y. October 11, 2012) (dismissing plaintiff's discrimination claims against each individual defendant because there is no individual liability under Title VII).

Here, Laraque has failed to plead any allegations that New Bedford was his employer for purposes of Title VII and NYSHRL, or that individual liability should attach to New Bedford for any other reason. Indeed, the complaint does not allege that New Bedford had any independent authority to hire or fire Laraque, or to unilaterally set his schedule, hours, or salary. Nor does it allege that New Bedford had an ownership interest in the Condo (or any subsidiary or related entity). In fact, the management agreement between the Condo and New Bedford specifies that no hiring or firing of Condo employees shall be permitted without the prior written consent of the Condo [Exhibit B at ¶ "SECOND (a)"]. In addition, Laraque's letter of termination was signed by the president of the Condo's board of managers and delivered to Laraque on Condo letterhead. Thus, it cannot be said that New Bedford was Laraque's employer in any respect.

Laraque's Title VII causes of action against New Bedford, as well as the claims under Section 1981, NYSHRL and NYCHRL, must be also dismissed for the additional reason that Laraque has failed to plead any allegations of wrongdoing against New Bedford.

A claim against New Bedford under Section 1981 requires plaintiff to allege "facts supporting that '[he] is a member of a racial minority,"…; 'an intent to discriminate on the basis of race by the defendant,' …; and 'the discrimination concerned one or more of the activities enumerated in the statute,' …." *McDowell v. North Shore–Long Island Jewish Health System, Inc.*, 839 F.Supp.2d 562, 566 (E.D.N.Y. 2012) (internal citations omitted). In addition, claims under Section 1981 require a contractual relationship between the plaintiff and defendant – in this instance an employment contract or relationship. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S.Ct. 1246, 1249 (2006) ("Any claim brought under § 1981, therefore,

must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights").

Similarly, under Title VII, NYSHRL, NYCHRL, Laraque must allege that: (1) he is a member of a protected class; (2) he was qualified for the position he held; and (3) he suffered an adverse employment action; (4) under circumstances giving rise to an inference of discrimination. *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006) ("The standards for liability under [the NYSHRL and NYCHRL] are the same as those under the equivalent federal antidiscrimination laws."). However, where a plaintiff does not make "a short and plain statement of the claim showing that the pleader is entitled to relief," the defendant is entitled to dismissal of the discrimination claims. *See e.g. Qureshi v. Nassau Bd. of Co-op. Educational Services*, 2012 WL 1416735 (E.D.N.Y. April 23, 2012).

For example, in *Qureshi*, plaintiff alleged that she was terminated from her position as a *per diem* substitute teacher and provided unequal terms and conditions of her employment, among other things, in violation of Title VII and Age Discrimination in Employment Act of 1967. Plaintiff's complaint vaguely referred to "speculative behavior" by a teaching assistant and that a student called her a "terrorist." *Qureshi*, 2012 WL 1416735 at *3. The Court granted defendants' motion to dismiss both claims. With respect to her Title VII claims in particular, the Court found that the vague referencing in the complaint fell short of establishing a *prima facie* case under Title VII. *Id.*

Similarly, in *Hughley v. U.S. Postal Service*, 1992 WL 51495 (S.D.N.Y. March 5, 2012), the Court dismissed *pro se* plaintiff's discriminatory removal claims against his former employer under Title VII and the Rehabilitation Act of 1973 on the grounds that the complaint contained "no set of allegations, liberally construed, which would establish a cognizable *prima facie* claim

not subject to Title VII's exhaustion requirements." 1992 WL 51495 at *5. Due to the insufficiency of the complaint, there was no way to insure that defendant would be on notice of the claims that plaintiff desired to assert against it. *Id.*

Similarly, here, Laraque has failed to meet his pleading burden in that the complaint is void of *any* allegations of wrongdoing against New Bedford. The only mention of New Bedford occurs in the introductory paragraphs wherein Laraque states that New Bedford is the managing agent of the Condo and employs Swiderski as a property manager. There are no allegations that a contractual relationship existed between New Bedford and Laraque for purposes of Section 1981 (because it did not). There are no allegations that New Bedford participated in any discriminatory, harassing or retaliatory conduct (because it did not). And there are no allegations that New Bedford was aware of any discriminatory or retaliatory conduct, or condoned the behavior in any way (because it did not). Under the most generous reading of the complaint, assuming the facts in the complaint are true and drawing all reasonable inferences in Laraque's favor, there are absolutely no facts that can be read to state a claim for relief against New Bedford on any basis. Accordingly, New Bedford cannot be held liable under Section 1981, Title VII, NYSHRL, NYCHRL , the first, second, third, fourth, fifth, sixth, eighth, and ninth causes of action must be dismissed as against it.

## ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED AS LARAQUE HAS FAILED TO PLEAD SUFFICIENT GROUNDS FOR INDIVIDUAL LIABILITY

Plaintiff also seeks relief against the individual defendants under NYSHRL, NYCHRL and Section 1981, and these claims must be dismissed as a matter of law because plaintiff has not pleaded sufficient facts to warrant individual liability.

Under the NYSHRL, an individual may be liable as an "employer," only when s/he has an "ownership interest or any power to do more than carry out personnel decisions made by others." *Ryan v. Grae & Rybicki, P.C.*, 1995 WL 170095 at *4 (E.D.N.Y. March 31, 1995) (citing *Patrowich v. Chemical Bank*, 63 N.Y.2d 541 (1984). Likewise, NYCHRL has been read to include employees only where such individual participates in hiring, firing, paying, or in administering the terms, conditions or privileges of employment. *Priore v. New York Yankees*, 307 A.D.2d 67, 74, 761 N.Y.S.2d 608, 614 (1st Dep't 2003) (citing Admin. Code City N.Y. § 8–107(6)).

Where a plaintiff seeks to assert an aiding and abetting theory of individual liability under both statutes, it must be shown that the individual actually participated in the conduct of an employer giving rise to the discrimination claim. *Feingold v. State of New York*, 366 F.3d 138, 158 (2d Cir. 2004). Moreover, courts have generally held individual liability cannot be established where the individual's acts create the underlying basis for the claim. *Reid v. Ingerman Smith LLP*, 876 F.Supp.2d 176, 187 (E.D.N.Y. 2012). In other words, individuals cannot be held liable for aiding and abetting their own violations of the antidiscrimination laws. *Id.*

In addition, "[i]n order to make out a claim for individual liability under Section 1981, '[Laraque] must demonstrate some affirmative link to causally connect [them] with the discriminatory action.... [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement.' " *Mazyck v. Metropolitan Transp. Authority*, --- F.Supp.2d ----, 2012 WL 3865155 at *18 (S.D.N.Y. Sept. 4, 2012) (citations omitted).

<u>Swiderski</u>

At bar, Laraque's claims that Swiderski discriminated against him on the basis of his race, national origin and sex; and that Swiderski aided and abetted the alleged discriminatory

conduct must be dismissed as a matter of law because Laraque has failed to cite to any specific actions taken by Swiderski because of his protected class(es). In his complaint Laraque only states that on the one occasion where he went to speak with Swiderski, Swiderski stated, "I'm not listening to you," and "This is bullshit." There are no allegations that Laraque informed Swiderski that he was being discriminated against for any reason or that Swiderski condoned the alleged discriminatory behavior. Nor are there any allegations that Swiderski participated in any discriminatory, harassing or retaliatory conduct. Moreover, Swiderski did not possess any ownership interest in the Condo nor was he responsible for making decisions respecting the terms of Laraque's employment. Indeed, those decisions were the responsibility of the Condo, Laraque's employer – not Swiderski. Swiderski was merely the Condo's property manager, and as such, acted under the direction of the Board. Therefore, Swiderski cannot be held liable for the alleged discrimination or aiding and abetting the discriminatory acts under Section 1981, NYSHRL or NYCHRL.

Olivieri

With respect to Olivieri, because an individual cannot be held liable for aiding and abetting his own violations of the anti-discrimination statutes and Laraque's entire complaint centers around acts by Olivieri, the aiding and abetting claims against him must be dismissed.

For example, in *Reid v. Ingerman Smith LLP*, plaintiff brought claims against her former employer and her former supervisor alleging NYSHRL violations, including aiding and abetting discrimination. Specifically, with respect to her supervisor, plaintiff alleged that while waiting to receive an assignment, her supervisor suddenly looked at her breasts, "'exclaimed 'those things are huge' and then grabbed and squeezed Plaintiff Reid's right breast.'" *Reid*, 876 F.Supp.2d at 179. Plaintiff further alleged that almost immediately after the incident, her supervisor changed her schedule of duties and withheld work from her. *Reid*, 876 F.Supp.2d at 180. Plaintiff

claims that she was later terminated in retaliation for her rejection of the supervisor's sexual advance. *Id.* With respect to plaintiff's aiding and abetting claims against the supervisor, the Court dismissed the claims because "[o]nly she is alleged to have participated in the alleged discriminatory conduct, and an individual cannot be held to have aided or abetted his or her own actions." *Reid*, 876 F.Supp.2d at 186.

Here, only Olivieri is alleged to have participated in the discriminatory conduct. The entire complaint is based on Olivieri's alleged interactions with Laraque. Laraque alleges that Olivieri called him offensive names on a regular basis; ridiculed his English; threatened to fire him without a legitimate basis; and touched him on his leg near his groin. Olivieri was the only actor and there are no allegations that any other person participated in or condone the conduct. The aiding and abetting claims, therefore, are limited by these very facts. That is, since individuals cannot be held liable for aiding and abetting their own violations of the NYSHRL or NYCHRL, assuming all facts in the complaint to be true, Olivieri cannot be held liable for aiding and abetting his own actions. In addition, Laraque does not allege that Olivieri has any ownership interest in the Condo or that he has any control over the terms of Laraque's employment for the purposes of individual liability. Therefore, the individual liability claims must be dismissed against Olivieri as well.

**LARAQUE'S SEXUAL HARASSMENT CLAIMS SHOULD BE DISMISSED AS INSUFFICIENTLY PLEADED**

Although Plaintiff asserts claims for both sexual harassment and sex discrimination, his complaint does not satisfy the pleading requirements for same-sex claims.

"A hostile work environment claim requires a showing (1) that harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and created and abusive working environment,' and (2) that a specific basis exists for imputing the

objectionable conduct to the employer." *Dingle v. Bimbo Bakeries*, 2012 WL 2872161 at *3 (E.D.N.Y. July 12, 2012). In the case of hostile work environment sexual harassment, the threshold issue is whether the conduct was *because of the plaintiff's sex*. *Id* (emphasis supplied). Plaintiff must show either (1) credible evidence that the harasser was homosexual; or (2) that the harasser was motivated by general hostility toward men in the workplace, or treated males differently from females. *Dingle*, 2012 WL 2872161 at **4* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998 (1998)).

In *Dingle v. Bimbo Bakeries*, a black male who had been employed by defendant as a mechanic alleged that he had been discriminated against when two foremen at his workplace "distributed and displayed a photo of a nude black male resembling the Plaintiff." 2012 WL 2872161 at *1. Plaintiff alleged that the defendant distributed the picture to his coworkers and made derogatory comments to him, including "sexual comments about the size of [his] penis." *Id.* In addition, plaintiff alleged that he was physically assaulted by a coworker because of the negative opinion created by the harassment. *Id.* In granting the defendants' motion to dismiss the claims, the Court found that the plaintiff had not "alleged facts that plausibly suggest his co-workers harassed him *because he is male*." 2012 WL 2872161 at *4. (emphasis in original). None of the facts asserted in the complaint identified his harassers as homosexuals. Nor did plaintiff allege any facts to suggest that they harbored a gender-based animus toward men or that there was different treatment between men and women. *Id.*

Here, Laraque's complaint is similarly deficient. The complaint failed to specifically allege that Olivieri discriminated against him *because of his sex*. Laraque asserts that "the harassment of [] Laraque by Defendant Olivieri was often sexual in nature, taking the form of touching Laraque on the leg in a sexual manner. Laraque also stated that on some unidentified

occasions "Olivieri would press his penis against Mr. Laraque" and "at other time, Defendant Olivieri would humiliate Mr. Laraque by asking Mr. Laraque to do him a 'favor' and 'hold [his] cock' or 'hold [his] dick." Apparently, Laraque also stated "If you suck a dick once, it doesn't mean you're gay." Even, taking all of these allegations as true and drawing all inferences in Laraque's favor, Laraque has not plausibly pleaded that Olivieri's behavior was motivated by the fact that Laraque is male. Moreover, the complaint makes no reference (or even conclusory assertions) that Olivieri is homosexual or is generally hostile toward men. Indeed, Laraque has not addressed Olivieri's treatment of other men working at the Condo. Nor has Laraque alleged that Olivieri treated males differently from females. Thus, accepting all his allegations as true, the facts merely demonstrate horseplay or a personal dispute between Laraque and Olivieri that is not based on his sex. Thus, the sexual harassment claim must be dismissed as a matter of law.

**LARAQUE'S ASSAULT AND BATTERY ALLEGATIONS OCCURRING OUTSIDE THE APPLICABLE LIMITATIONS PERIOD SHOULD BE DISMISSED AS A MATTER OF COURSE**

Under New York law, plaintiff's eleventh and twelfth causes of action for assault and battery carry a one-year statute of limitations. *Excell v. City of New York*, 2012 WL 2675013 at *4 (E.D.N.Y. July 5, 2012). Thus, any causes of action based on events occurred more than one year prior to the filing of the instant complaint must be dismissed as time barred.

Here, the instant complaint was filed on November 13, 2012 which means that the operative time period for any assault is November 13, 2011 through November 13, 2012. Therefore, to the extent that plaintiff seeks to raise state law claims for assault and battery based on any events that occurred outside of the operative period, those allegations must be dismissed.

## CONCLUSION

Wherefore, it is respectfully submitted that the defendants motion to dismiss should be granted in all respects and that the Court should grant such further relief as it deems just and proper.

Dated: New York, New York
January 22, 2013

**CANTOR, EPSTEIN & MAZZOLA, LLP**
*Attorneys for Defendants*

By: /s/ Bryan J. Mazzola
Bryan J. Mazzola, Esq. (7970)
49 West 37th Street
New York, New York 10018
212-768-4343